### UNITED STATES DISTRICT COURT
### MIDDLE DISTRICT OF PENNSYLVANIA

KL, a minor, by and through his
parents and natural guardians,
JOSEPH and STACEY LOCKER,

            Plaintiff,           CIVIL ACTION NO. 3:24-cv-01461

            v.                   (SAPORITO, J.)

DUNMORE SCHOOL DISTRICT,
et al.,

            Defendants.

### MEMORANDUM

This federal civil rights action was brought on behalf of a minor child, KL, by his parents, Joseph and Stacey Locker. KL is a student in the Dunmore School District, where he is eligible to receive special education services as a child with disabilities. The action commenced when the plaintiff filed his fourteen-count complaint on August 28, 2024. Doc. 1.

In November 2021, KL was a 14-year old eighth grader at Dunmore Middle School. Another minor student, JM, used a cellphone to photograph KL inside of a bathroom stall while he was urinating with his genitals exposed. JM shared the photograph with other students via

Snapchat.[1]

Another student informed the middle school principal, Christopher Lucas, about the existence of the photograph. Lucas and the school resource officer, SRO Springer, began an investigation, which included speaking with KL. Lucas notified KL's parents, but he advised them that there was nothing the school could do to track down the photograph shared on Snapchat. The complaint alleges that Lucas spoke with JM about the incident, but no disciplinary action was taken against JM. The complaint characterizes Lucas's treatment of the matter as "sweeping the incident under the rug."

The complaint alleges that, as a result of this incident, KL has continued to be bullied by other students, and he has suffered severe and permanent psychological damage, physical harm, and emotional distress. In particular, the complaint alleges that KL was at one point hospitalized for serious and severe suicidal ideation, and he has also suffered from anxiety, depression, embarrassment, and mental anguish.

---

[1] *See generally Mahanoy Area Sch. Dist. v. B.L. ex rel. Levy*, 141 S. Ct. 2038, 2043 (2021) ("Snapchat [is] a social media application that allows users to post photos and videos that disappear after a set period of time.").

KL now brings this action for damages against the District, against Christopher Lucas, in both his personal capacity and his official capacity as principal of the District's middle school, and against Kristie Maldonado, both personally and as parent and natural guardian of JM. He asserts federal civil rights claims against the District and Lucas under 42 U.S.C. § 1983, the Fourteenth Amendment's due process and equal protection clauses, the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Section 504" or the "RA"), 29 U.S.C. § 794, and Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681 *et seq.*, claiming that the bathroom incident could have been prevented by the exercise of reasonable diligence by the District and Lucas, and that the District and Lucas further failed to take immediate and appropriate action to prevent further harm after they learned about the photograph. KL further asserts state-law tort and contract claims against the District and Lucas, and state-law tort claims against Maldonado, both personally and as JM's parent and guardian.

Maldonado has not entered an appearance in this case. But default

has neither been requested nor entered against Maldonado.

The District and Lucas, jointly represented, have filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Doc. 5. That motion is fully briefed and ripe for decision. Doc. 10; Doc. 16; Doc. 17.

## I.    FACTUAL ALLEGATIONS

At the time of the incident giving rise to this suit, KL was a fourteen-year-old, male, eighth-grade student at Dunmore Middle School, within the Dunmore School District. He is eligible for special education services and has disabilities that impact his life. Specifically, he was diagnosed in first grade with attention deficit hyperactivity disorder ("ADHD"), and he has been receiving special needs education ever since.

KL's educational instruction is substantially through a general education classroom and curriculum, but he is entitled through an Independent Educational Plan ("IEP") to receive several modifications, including: (a) he is permitted to take quizzes in a resource room; (b) he is allowed extended time to complete tests and quizzes; (c) his general education teacher provides him with a copy of notes for science and civics

classes; (d) he is allowed the use of a calculator for math assessments; and (e) he is provided reduced answer choices on multiple choice assessments.

On November 7, 2021, KL and his parents were informed by the District that JM had used a cellphone provided to him by his parent to photograph KL inside a bathroom stall at the Dunmore Middle School. The photograph was taken while KL was urinating with his genitals exposed.

KL remembered that, a few days earlier, he had requested to go to the restroom while in class. When KL went into the hallway, he was followed out of the classroom by JM. When KL entered the restroom, he immediately went to a stall to try to protect his privacy.[2] KL knew JM was in the restroom, and he saw JM in the stall next to him. KL also

---

[2] The complaint alleges that it was "common knowledge" among Dunmore students that "people were taking photographs and videos of students using the rest room." Compl. ¶ 30, Doc. 1. We decline to credit this entirely unsupported conclusion as fact. *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1333 (S.D. Fla. 2004) (rejecting conclusory allegation that it was "known" or "common knowledge" that certain accounts were uncollectible); *see also Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc). But we do find it reasonable to infer from the allegations of the complaint that *KL* may have been concerned about such activity.

heard JM laughing while in the restroom. While walking back to class, JM told KL that he took a picture of KL, but JM seemed to be saying this in a joking manner. Thus, at the time, KL did not believe that JM took a photograph.

However, JM had actually taken a photograph of KL in the bathroom with his genitals exposed, using a cellphone provided by his parent, and he used that same cellphone then to disseminate the photograph of KL's genitals to other students through the application Snapchat.

Additionally, KL later became aware through a published news story that JM is a transgender student, who identifies as male but was born female. JM was nonetheless allowed by the District and by Lucas to use the boy's restroom. Thus, at the time of this incident, JM, a biological female student, was in the boy's restroom with KL, a male student.

The District has published a student handbook that sets forth rules and regulations for students who attend Dunmore Middle School. The handbook prohibited students from having their cellphones while in school, requiring that, upon entering the school, students place all electronic devices in their lockers or in device holders in their classrooms

for each particular class. This policy was clearly not enforced with respect to the cellphone used by JM to photograph KL in the restroom.[3] In addition, the handbook also prohibits the taking of videos or photographs of other students without their consent.

Another student informed the middle school principal, Lucas, of the existence of the photograph. After Lucas and SRO Springer learned of the incident, an investigation was commenced. KL spoke with Lucas and SRO Springer and told them what had occurred on the day when he was in the restroom with JM.

Lucas informed KL's parents that he believed JM had taken a pornographic photograph of KL, that the photograph was shared on Snapchat, and—because of the ephemeral nature of Snapchat communications—there was nothing else the school could do to track down when and where the photograph was shared.[4]

---

[3] The complaint alleges that it was "common knowledge" among Dunmore staff and students that "the regulation regarding the use of cellular phones was not effectively enforced by the staff and administration" of the District. Compl. ¶ 41. We decline to credit this entirely unsupported conclusion as fact. *See Druskin*, 299 F. Supp. 2d at 1333; *see also Morrow*, 719 F.3d at 165. But it was clearly not enforced with respect to JM's cellphone.

[4] The complaint also alleges that this last statement by Lucas to KL's parents was not true.

As part of the investigation, JM was brought into Lucas's office and asked about the incident, but nothing was done—no suspension or other punishment was handed down by the District or Lucas with respect to JM's violations of the student handbook. In his complaint, the plaintiff has characterized Lucas's conduct of this investigation as merely "sweeping the incident under the rug."

As a minor, JM did not have the capacity to contract for cellphone service on his own. Thus, the plaintiff alleges that Maldonado had dominion and control over the use of the cellphone in JM's possession on the day of the incident. Moreover, as JM's parent, Maldonado was in position to supervise JM's use of the cellphone, but did not do so.

After and because of this incident, KL has continued to be bullied by other students. The plaintiff alleges that, as a result of the defendants' misconduct, he has suffered severe and permanent psychological damage, physical harm, and emotional distress. KL has suffered from anxiety, depression, suicidal ideation, embarrassment, and mental anguish. On one occasion, KL was required to be hospitalized for serious and severe suicidal ideation as a result of the incident.

## II.  LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies;

and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. This case falls into the former category.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). In deciding the motion, the Court may consider the facts alleged

on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Nor is it required to credit factual allegations contradicted by indisputably authentic documents on which the complaint relies or matters of public record of which we may take judicial notice. *In re Washington Mut. Inc.*, 741 Fed. App'x 88, 91 n.3 (3d Cir. 2018); *Sourovelis v. City of Phila.*, 246 F. Supp. 3d 1058, 1075 (E.D. Pa. 2017); *Banks v. Cnty. of Allegheny*, 568 F. Supp. 2d 579, 588–89 (W.D. Pa. 2008).

## III.   DISCUSSION

### A. Exhaustion of Administrative Remedies Under IDEA

Counts I through V of the complaint assert that the District and Lucas failed to provide KL with a free appropriate public education

("FAPE"),[5] as required under the IDEA, but they bring these claims under other statutes. The District and Lucas first raise a threshold argument that this court lacks subject matter jurisdiction over these claims because the plaintiff failed to exhaust administrative remedies available to him under the IDEA. *See* 20 U.S.C. § 1415(*l*). The plaintiff responds that administrative exhaustion is not required because he seeks a damages remedy only, and not any of the equitable relief ordinarily available under the IDEA.

"Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit seeks relief that is also available under the IDEA." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 165 (2017) (internal quotation marks and brackets omitted). But here, the plaintiff seeks damages only. Thus, although this suit is "premised on the past denial of a free appropriate public education," it may "nonetheless proceed without exhausting IDEA's administrative

---

[5] "As defined in the Act, a FAPE comprises 'special education and related services'—both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'support services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017).

processes [because] the remedy [the] plaintiff seeks is not one the IDEA provides." *Luna Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 150 (2023).

Accordingly, we find the court's exercise of subject matter jurisdiction in this matter to be appropriate.

## B. Count I: Section 1983 and IDEA

In Count I, the plaintiff brings a claim for damages against the District and Lucas under § 1983 and the IDEA. Based on their failure to protect KL from the incident described above, in which JM took a photograph of KL's genitals while he was using the restroom, and their failure to protect KL from harassment and bullying by other students as a result of the photograph, the plaintiff claims that the District and Lucas failed to provide KL with a FAPE, as required under the IDEA. For relief, the plaintiff does not seek the compensatory education, private school tuition reimbursement, private evaluations, or other prospective relief ordinarily available under the IDEA. Instead, the plaintiff seeks only damages under § 1983.

Under binding Third Circuit precedent, however, because the IDEA provides its own comprehensive remedial scheme, § 1983 is not available to provide a damages remedy for violations of the IDEA. *See A.W. v.*

*Jersey City Pub. Schs.*, 486 F.3d 791, 803 (3d Cir. 2007). Accordingly, the plaintiff's § 1983 claim based on violation of the IDEA, as set forth in Count I, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### C. Counts I and II: Fourteenth Amendment Due Process

Between both Counts I and II, the plaintiff brings claims for damages against the District and Lucas under § 1983 and the Fourteenth Amendment's due process clause. Specifically, Count I asserts a Fourteenth Amendment substantive due process claim based on a violation of KL's right to personal security and bodily integrity, and Count II asserts a Fourteenth Amendment substantive due process claim based on a failure to provide KL with a FAPE.[6]

---

[6] Although captioned as a Section 1983 claim brought under the IDEA, Count I also includes a paragraph asserting that the alleged denial of a FAPE violated KL's Fourteenth Amendment right to substantive due process, based on a fundamental liberty interest in personal security and bodily integrity. Compl. ¶ 85. Meanwhile, Count II asserts, somewhat vaguely, that "[t]he Defendants' conduct in failing to provide KL with a free appropriate public education constitutes unlawful discrimination against KL and other special education children . . . in violation of due process contrary to the 14th amendment to the United States Constitution." *Id.* ¶ 91. It also pleads that the alleged conduct of the District and Lucas "shocks the conscience." *Id.* ¶ 95. *See generally Morrow*, 719 F.3d at 170 (reciting elements of a state-created danger *(continued on next page)*

We begin with the substantive due process claim articulated in Count II, which simply fails to state a claim upon which relief can be granted. "The denial of a FAPE does not give rise to a substantive due process violation because the substantive component of the Due Process Clause does not protect educational interests." *Vicky M. v. Ne. Educ. Intermediate Unit 19*, 486 F. Supp. 2d 437, 456 (M.D. Pa. 2007); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35 (1973) ("Education . . . is not among the rights afforded explicit protection under our Federal Constitution. Nor do we find any basis for saying it is implicitly so protected."); *Fiedler v. Stroudsburg Area Sch. Dist.*, 427 F. Supp. 3d 539, 555 (M.D. Pa. 2019) ("[T]here is no fundamental right to a public education under the United States Constitution.").

We turn then to the substantive due process claim articulated in Count I. The Supreme Court of the United States has long recognized that the Fourteenth Amendment's due process clause protects against government interference with an individual's fundamental right to bodily integrity. *See Washington v. Glucksberg*, 521 U.S. 702, 720 (1997); *see*

---

substantive due process claim, including "a state actor acted with a degree of culpability that shocks the conscience").

*also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008)

("Individuals have a constitutional liberty interest in personal bodily

integrity that is protected by the Due Process Clause of the Fourteenth

Amendment." (citing *Ingraham v. Wright*, 430 U.S. 651, 672–74 (1977)));

*Black ex rel. Black v. Ind. Area Sch. Dist.*, 985 F.2d 707, 709 n.1 (3d Cir.

1993) ("Plaintiffs have a liberty interest in their bodily integrity that is

protected by the Fourteenth Amendment." (citing *Ingraham*, 430 U.S. at

673–74, and *Youngberg v. Romeo*, 457 U.S. 307, 315 (1982))).

But, in this case, there is no allegation of an intrusion upon bodily

integrity.[7] The complaint alleges only that JM surreptitiously took a

---

[7] In his brief, the plaintiff has cited *Kane v. Barger*, 902 F.3d 185 (3d Cir. 2018), a case involving a sexual assault victim's claim that an investigating police officer violated her right to bodily integrity by touching her and photographing her intimate bodily areas with his personal cellphone. Br. Opp'n 16, Doc. 16. But *Kane* is inapposite to this case, which involves no physical contact whatsoever.

We note, however, that the Third Circuit has also recognized "a right to privacy in a person's unclothed or partially clothed body" protected by the Fourteenth Amendment's due process clause. *See Doe ex rel. Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 527 & n.53 (3d Cir. 2018); *see also Doe v. Luzerne Cnty.*, 660 F.3d 169, 176–77 (3d Cir. 2011) ("Privacy claims under the Fourteenth Amendment necessarily require fact-intensive and context-specific analyses, and unfortunately, bright lines generally cannot be drawn."); *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 497–98 (6th Cir. 2008) (finding a privacy violation where a middle school's surveillance cameras recorded the plaintiff students in

*(continued on next page)*

photograph of KL's genitalia, which he then shared with others via social media. It does not allege any physical contact whatsoever. *See Shaefer v. Corba*, No. 3:23-0019, 2023 WL 6217355, at *4 (M.D. Pa. Sept. 25, 2023) (teacher's taking multiple photographs of student without any sexual interaction or physical contact did not implicate the student's right to bodily integrity). Furthermore, it is well established that "reputation alone is not an interest protected by the Due Process Clause." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989); *see also Barnett v. Penn Hills Sch. Dist.*, 705 Fed. App'x 71, 74 (3d Cir. 2017) (affirming dismissal of substantive due process claim based on combined interests in public employment and reputation).

Moreover, the wrongful conduct at issue in this case was not by a school official, but another student. It is well established that "[a]s a

_____

their undergarments while in the school locker room), *cited in Boyertown*, 897 F.3d at 527 n.53; *Poe v. Leonard*, 282 F.3d 123, 136–37 (2d Cir. 2002) (holding that the surreptitious videotaping of an officer undressing by fellow officers was actionable as a violation of the Fourteenth Amendment's substantive-due-process "right to privacy in one's unclothed body"), *cited in Boyertown*, 897 F.3d at 527 n.53; *York v. Story*, 324 F.2d 450 (9th Cir. 1963) (allowing witness who was forced to undress while being questioned at a police station to assert a Fourteenth Amendment violation of privacy claim), *cited in Boyertown*, 897 F.3d at 527 n.53. But the plaintiff's complaint does not articulate such a claim.

general matter, . . . a State's failure to protect an individual against private violence simply does not constitute a violation of the Due Process Clause." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 197 (1989). "The Due Process Clause forbids the State *itself* from depriving 'individuals of life, liberty, or property without 'due process of law,' but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.'" *Morrow*, 719 F.3d at 166 (quoting *DeShaney*, 489 U.S. at 195 (emphasis in original)); *see also Phillips*, 515 F.3d at 235 ("[T]he Due Process Clause does not impose an affirmative obligation on the state to protect its citizens." (citing *DeShaney*, 489 U.S. at 195–96)).

As recognized by the Third Circuit, the "state-created danger doctrine" is "a narrow exception to the general rule that the state has no duty to protect its citizens from private harms." *Henry v. City of Erie*, 728 F.3d 275, 286 (3d Cir. 2013); *see also Vorobyev v. Wolfe*, 638 F. Supp. 3d 410, 424 (M.D. Pa. 2022) ("The Third Circuit has . . . recognized, but narrowly construed, the state-created danger doctrine as a carefully crafted and specifically defined exception to *DeShaney's* scope."). Under this theory, "liability may attach where the state acts to *create* or *enhance*

a danger that deprives the plaintiff of his or her Fourteenth Amendment right to substantive due process." *Morrow*, 719 F.3d at 177 (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1205 (3d Cir. 1996)) (emphasis in original). To state a claim under this theory, a plaintiff must plausibly allege the following four elements:

> 1) the harm ultimately caused was foreseeable and direct;
>
> 2) a state actor acted with a degree of culpability that shocks the conscience;
>
> 3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Id.* (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

Here, the allegations of the complaint are insufficient to plausibly establish the first element of a state-created danger claim. The complaint alleges that KL "suffered severe and permanent psychological damage, physical harm, and emotional distress." Compl. ¶¶ 62, 83, Doc. 1. The

complaint further alleges that KL suffered "anxiety, depression, suicidal ideations, embarrassment, mental anguish, and other injuries," and it alleges that KL was at one point hospitalized for "serious and severe suicidal ideations." *Id.* ¶¶ 63–64, 84. The complaint fails to plausibly allege a foreseeable and fairly direct harm because it alleges no facts whatsoever in support of these vague allegations of injury. The conclusory allegation of "physical harm," without any further factual support, is insufficient to survive a motion to dismiss. *See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 430–31 (M.D. Pa. 2014). Moreover, mental or emotional distress alone is insufficient to constitute the requisite harm in a state-created danger claim. *See Carey v. City of Wilkes-Barre*, 410 Fed. App'x 479, 483 (3d Cir. 2011) (holding that the plaintiff's allegation of anxiety did "not rise to the level of foreseeable and fairly direct harm," and "the emotional distress alleged by [the plaintiff] is not a cognizable harm"); *see also Doe #1 v. Delaware Valley Sch. Dist.*, 572 F. Supp. 3d 38, 75 n.11 (M.D. Pa. 2021); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 667 (E.D. Pa. 2020).

The complaint also fails to plausibly allege the fourth element of a state-created danger claim—an affirmative act by the District or Lucas

that created a danger to KL or that rendered KL more vulnerable to danger than had the District or Lucas not acted at all. In his opposition brief, the plaintiff identifies "allow[ing] students to take cellular phones with cameras into restrooms" as the affirmative act. Br. Opp'n 18, Doc. 16. Looking to the allegations of the complaint, we find that any state-created danger claim[8] rests entirely on the District's and Lucas's alleged inaction or failure to act, pointing only to their failure to enforce a school policy limiting the possession or use of cellphones by students within the school.[9] But the Third Circuit has "repeatedly held that an alleged failure *to do something*, standing alone, cannot be the basis for a state-created danger claim." *Johnson v. City of Phila.*, 975 F.3d 394, 401 (3d Cir. 2020) (emphasis in original); *Luu v. Esterly*, 367 F. Supp. 3d 335, 348 (E.D. Pa. 2019) ("[T]he Third Circuit Court of Appeals has routinely held that an alleged failure to enforce its own policies is not equivalent to an

---

[8] The complaint does not explicitly articulate a state-created danger claim, but the plaintiff's substantive due process claim is essentially recast as one in his opposition brief.

[9] The complaint alleges that the policy required students to either secure their cellphones in their lockers or to place them in cellphone holders when in class. While it is not clear that that such a policy necessarily prohibited possession of a cellphone in the hallways between classes, or in the restrooms, we find it reasonable to infer that the policy did so for Rule 12(b)(6) purposes.

affirmative act.") (collecting cases); *see also Phillips*, 515 F.3d at 236 (holding that, if a plaintiff's "allegations, at their core, are omissions, not commissions—inactions rather than actions," the plaintiff has failed to adequately plead a state-created danger claim); *Dorley v. S. Fayette Twp. Sch. Dist.*, 129 F. Supp. 3d 220, 237 (W.D. Pa. 2015) ("Courts must assess . . . whether state officials 'created or increased the risk' themselves, or whether they simply 'might have done more' to protect individuals from harm.") (citing *Morrow*, 719 F.3d at 179). The moving defendants' alleged failure to take action does not constitute affirmative conduct that triggers a duty to protect under the state-created danger doctrine. *See Bright*, 443 F.3d at 282 ("It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."). Indeed, to characterize their inaction as an "affirmative exercise of authority" would permit "the state-created danger *exception* [to] swallow the rule. . . . Any and all failures to act would be transformed into an affirmative exercise of authority." *Morrow*, 719 F.3d at 178 (emphasis in original); *see also Gayemen v. Sch. Dist. of City of Allentown*, 712 Fed. App'x 218, 221 (3d Cir. 2017) ("This Court has repeatedly rejected similar efforts to recharacterize inaction as action.").

Accordingly, the plaintiff's § 1983 Fourteenth Amendment substantive due process claims, as set forth in Counts I and II, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### D. Count II: Fourteenth Amendment Equal Protection

In Count II, the plaintiff also brings a claim for damages against the District and Lucas under § 1983 and the Fourteenth Amendment's equal protection clause. The entire substance of the plaintiff's equal protection claim is alleged as follows: "The Defendants' conduct in failing to provide KL with a free appropriate public education constitutes unlawful discrimination against KL and other special education children in violation of the equal protection clause of the 14th amendment . . . to the United States Constitution." Compl. ¶ 91.[10]

But "[a] school's failure to provide FAPE to a particular student does not automatically trigger a violation of the equal protection clause."

---

[10] Count II includes other paragraphs. One paragraph incorporates all preceding paragraphs, Compl. ¶ 90, and four allege legal conclusions, including causation, *id.* ¶ 92, that KL's statutory rights were violated, *id.* ¶ 93, that KL suffered damages as a result, *id.* ¶ 94, and that the defendants' conduct shocked the conscience, *id.* ¶ 95. None address the requisite elements of an equal protection claim.

*Ronald E. v. Sch. Dist. of Phila. Bd. of Educ.*, No. 05-2535, 2007 WL 4225584, at *9 (E.D. Pa. Nov. 29, 2007) (granting summary judgment), *aff'd in relevant part, rev'd in part on other grounds sub nom. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 196–97 (3d Cir. 2009); *see also Bd. of Tr. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 368 (2001) ("If special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause."); *Irene B. v. Phila. Academy Charter Sch.*, No. 02-1716, 2003 WL 24052009, at *13 n.28 (E.D. Pa. Jan. 29, 2003) (rejecting conclusory argument that "a school's failure to provide FAPE to children with disabilities constitutes a violation of the equal protection clause").

To sufficiently plead a violation of the equal protection clause, the plaintiff must allege that KL "received different treatment from other similarly situated individuals or groups." *Tereance D. ex rel. Wanda D. v. Sch. Dist. of Phila.*, 548 F. Supp. 2d 162, 169 (E.D. Pa. 2008) (quoting *Brown v. Borough of Mahaffey*, 35 F.3d 846, 850 (3d Cir. 1994)). Here, the complaint simply does not allege that the District or Lucas treated KL different from any other similarly situated student in any way. *See Roquet v. Kelly*, No. 4:11-cv-01763, at *8 (M.D. Pa. Oct. 9, 2013)

(dismissing equal protection claim that failed to allege that disabled student was treated differently from any other similarly situated student in any way).

Accordingly, the plaintiff's § 1983 equal protection claim asserted in Count II will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### E. Count III: Damages Under the IDEA

In Count III, the plaintiff brings a claim for damages against the District and Lucas under the IDEA directly. Based on their failure to protect KL from the incident described above, in which JM took a photograph of KL's genitals while he was using the restroom, and their failure to protect KL from harassment and bullying by other students as a result of the photograph, the plaintiff claims that the District and Lucas failed to provide KL with a FAPE, as required under the IDEA. For relief, the plaintiff does not seek the compensatory education, private school tuition reimbursement, private evaluations, or other prospective relief ordinarily available under the IDEA. Instead, the plaintiff seeks only damages.

But, under binding Third Circuit precedent, monetary damages are

simply not an available remedy under the IDEA. *See Chambers*, 587 F.3d at 185–86. Accordingly, the plaintiff's claim for damages under the IDEA directly, as set forth in Count III, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### F. Counts IV and V: Disability Discrimination

In Counts IV and V, the plaintiff brings disability discrimination claims for damages against the District under Title II of the ADA and Section 504 of the RA, and in Count XIV, the plaintiff brings a corresponding claim for attorney fees under fee-shifting provisions of the ADA and the RA. Based on the District's failure to protect KL from the incident described above, in which JM took a photograph of KL's genitals while he was using the restroom, and its failure to protect KL from harassment and bullying by other students as a result of the photograph, the plaintiff claims that the District discriminated against KL on the basis of his disabilities.

As a threshold matter, we note that the plaintiff's disability discrimination claims seek both compensatory *and* punitive damages. But punitive damages are simply not an available remedy under either

Title II of the ADA or Section 504 of the RA. *See Barnes v. Gorman*, 536 U.S. 181, 189–90 (2002) (holding that punitive damages may not be awarded in suits brought under Title II of the ADA or Section 504 of the RA); *see also Talley*, 2023 WL 118470, at *1 n.2 ("[P]unitive damages are not available under Title II of the ADA."); *A.W.*, 486 F.3d at 804 ("The remedies for violation of Section 504 [of the ADA] . . . include compensatory damages, injunctive relief, and other forms of relief traditionally available in suits for breach of contract. Punitive damages are not available.") (citation omitted). Thus, the plaintiff has failed to state a claim for punitive damages under the ADA and the RA.

Title II of the ADA provides that "no qualified individual with a disability shall by reason of such disability be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Claims under the ADA and the RA are generally subject to the same substantive standard.[11] *See Matthews v. Pa. Dep't of Corr.*, 613 Fed. App'x 163, 166–67 (3d Cir. 2015) ("The ADA and the Rehabilitation Act have the same standard for liability and are to be interpreted consistently.") (citing *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012); *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 260 (3d Cir. 2013) ("The same standards govern both the RA and the ADA claims."); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 535 n.12 (3d Cir. 2007) ("Although the language of the ADA and Rehabilitation Act differs, the standards for determining liability under the two statutes are identical."). "To state a claim under either the ADA or the RA, [a plaintiff] must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service,

---

[11] To make out a claim under the RA, a plaintiff must establish the same elements as under the ADA, but he or she must also prove that the program in question received federal funding. *CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 n.10 (3d Cir. 2013). Moreover, the causation elements of the ADA and the RA differ in that the "RA allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program *solely* on the basis of a disability, while the ADA covers discrimination on the basis of disability, even if there is another cause as well." *Id.* at 235–36 (emphasis added). But both statutes require plaintiffs to prove "that they were treated differently based on the protected characteristic, namely the existence of their disability." *Id.* at 236.

or activity, or otherwise was subject to discrimination, by reason of his disability." *Furgess v. Pa. Dep't of Corr.*, 933 F.3d 285, 288–89 (3d Cir. 2019); *see also Durham v. Kelley*, 82 F.4th 217, 225 (3d Cir. 2023); *Matthews v. Pa. Dep't of Corr.*, 827 Fed. App'x 184, 187 (3d Cir. 2020) (citing *Bowers*, 475 F.3d at 553 n.32).

In the primary or secondary school context,[12] the Third Circuit has recognized that the denial of a FAPE to a disabled student will "almost always" also be a violation of the RA and the ADA. *Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007); *see also CG v. Pa. Dep't of Educ.*, 734 F.3d 229, 235 (3d Cir. 2013) ("Failure to provide a FAPE violates Part B of the IDEA and generally violates the ADA and RA because it deprives students of a benefit that non-disabled students receive simply by attending school in the normal course—a free, appropriate public education.") (footnote omitted); *T.R. v. Sch. Dist. of Phila.*, 223 F. Supp. 3d 321, 333 (E.D. Pa. 2016) (citing *CG*, 734 F.3d at 235). As the Third Circuit has explained:

---

[12] Under the IDEA, states accepting federal funds are required to provide a FAPE to children with disabilities who are between the ages of 3 and 21, inclusive. *See* 20 U.S.C. § 1412(a)(1); *Andrew M. v. Del. Cnty. Office of Mental Health & Mental Retardation*, 490 F.3d 337, 350 (3d Cir. 2007).

> [W]hen a state fails to provide a disabled child with a
> free and appropriate education, it violates the IDEA.
> However, it also violates the RA [and the ADA] because
> it is denying a disabled child a guaranteed education
> merely because of the child's disability. It is the denial
> of an education that is guaranteed to all children that
> forms the basis of the claim. Therefore, a plaintiff can
> prove an RA [or ADA] violation where "(1) he is
> 'disabled' as defined by the Act; (2) he is 'otherwise
> qualified' to participate in school activities; (3) the
> school or the board of education receives federal
> financial assistance;[13] and (4) he was excluded from
> participation in, denied the benefits of, or subject to
> discrimination at, the school."

*Andrew M.*, 490 F.3d. at 350 (quoting *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253 (3d Cir. 1999)).

But the plaintiff here faces an additional hurdle under the ADA and the RA: He "must also show intentional discrimination under a deliberate indifference standard because he seeks compensatory damages." *Furgess*, 933 F.3d at 289; *see also Durham*, 82 F.4th at 226; *Matthews*, 827 Fed. App'x at 187; *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 537 Fed. App'x 90, 95–96 (3d Cir. 2013); *Durrell*, 729 F.3d at 261 ("[C]laims for compensatory damages under § 504 of the RA and § 202 of the ADA also require a finding of intentional discrimination."); *id.* at 263 ("[A]

---

[13] Of course, the federal financial assistance element does not apply to a disability discrimination claim under the ADA.

showing of deliberate indifference may satisfy a claim for compensatory damages under § 504 of the RA and § 202 of the ADA."). To plead deliberate indifference, an ADA or RA claimant must allege "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Durrell*, 729 F.3d at 263 (internal quotation marks omitted); *see also Durham*, 82 F.4th at 226; *Matthews*, 827 Fed. App'x at 187. Moreover, the "deliberate indifference must be a deliberate choice, rather than negligence or bureaucratic inaction." *Durrell*, 729 F.3d at 263 (internal quotation marks omitted); *Chambers*, 537 Fed. App'x at 96 (quoting *Durrell*, 729 F.3d at 263).

The complaint alleges no facts whatsoever to support a finding that the District was subjectively aware that a harm to KL's federally protected right to a free appropriate education was substantially likely, or that the District failed to act upon that likelihood. In particular, the complaint includes no non-conclusory allegations that the District or its policymakers[14] were aware of a pattern of similar prior incidents

---

[14] "The final policy maker for a school district in Pennsylvania is typically the school board or the superintendent." *E.N. v. Susquehanna*
*(continued on next page)*

involving students taking photographs of other students in school restrooms, much less circulating them via social media.

Accordingly, the plaintiff's disability discrimination claims for damages against the District under Title II of the ADA and Section 504 of the RA, as set forth in Counts IV and V, and his claim for attorney fees under the ADA and the RA, as set forth in Count XIV, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### G. Count VI: Title IX

In Count VI, the plaintiff brings a claim for damages against the District and Lucas under Title IX. Based on their failure to protect KL from the incident described above, in which JM took a photograph of KL's genitals while he was using the restroom, and their failure to protect KL from harassment and bullying by other students as a result of the photograph, the plaintiff claims that the District and Lucas were

_____

*Twp. Sch. Dist.*, No. 1:09-CV-1727, 2011 WL 3608544, at *8 (M.D. Pa. July 5, 2011); *see also Flood v. Sherk*, 400 F. Supp. 3d 295, 311 (W.D. Pa. 2019) (finding that the school board, not a high school principal, was the final policymaker for a school district with respect to student discipline, through whom actual knowledge of prior incidents could be attributed to the district).

deliberately indifferent to JM's sexual harassment of KL.

As a threshold matter, it is well established that Title IX does not authorize suits against individual defendants. *See Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009) ("Title IX reaches institutions and programs that receive federal funds, . . . but it has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."). Thus, the plaintiff has failed to state a claim upon which relief can be granted with respect to his Title IX claim for damages against Lucas individually.

Title IX provides, in pertinent part, that "[n]o person in the United States shall, on the basis of sex, be excluded participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Supreme Court has recognized an implied private cause of action for monetary damages under Title IX. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 283–84 (1998). To state a claim of deliberate indifference to student-on-student sexual harassment under Title IX, a plaintiff must show that:

> (1) the defendant received federal funds; (2) sexual harassment occurred; (3) the harassment took place

under "circumstances wherein the funding recipient exercised substantial control over both the harasser and the context in which the harassment occurred"; (4) the funding recipient had "actual knowledge" of the harassment; (5) the funding recipient was "deliberately indifferent" to the harassment; and (6) the harassment was "so severe, pervasive, and objectively offensive that it could be said to have deprived the victims of access to the educational opportunities or benefits provided by the school."

*Dawn L. v. Greater Johnstown Sch. Dist.*, 586 F. Supp. 2d 332, 365 (W.D. Pa. 2008) (quoting *Davis ex rel. LaShonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 645, 650 (1999) (ellipsis and brackets omitted)).

The parties do not contest the first element. The District received federal financial assistance.

With respect to the second and third elements, the complaint alleges that KL was subjected to sexual harassment when JM took a photograph of his exposed genitalia in a school restroom during a school day—a time and location where the District clearly exercised substantial control over both the harasser and the context in which the harassment occurred—and also when that photograph was then disseminated to others via social media. At this, the pleadings stage, we decline the moving defendants' invitation to find that the surreptitious taking of a pornographic photograph of an adolescent boy's exposed genitalia by an

- 34 -

adolescent transgender boy, and the subsequent distribution of that pornographic photograph to other students via social media, has "nothing to do with gender" or sex. *See* Br. Supp. 15, Doc. 10. But we do find that any subsequent harassment through dissemination of the photograph among Dunmore students and possibly other social media users via Snapchat did not occur under circumstances where the District exercised substantial control over either the unidentified harassers or the context in which the harassment occurred. *See Davis*, 526 U.S. at 645–46; *Gebser*, 526 U.S. at 645; *M.S. v. Susquehanna Twp. Sch. Dist.*, No. 1:13-cv-02718, 2017 WL 6397827, at *10 (M.D. Pa. Mar. 29, 2017) (involving social media harassment), *R. & R. adopted*, 2017 WL 6403007 (M.D. Pa. Aug. 16, 2017), *aff'd sub nom. M.S. ex rel Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120 (3d Cir. 2020).

With respect to the fourth and fifth elements, a school district may only be found to be deliberately indifferent to *known acts* of student-on-student sexual harassment—the "actual notice" required by Title IX cannot be based on a mere *possibility* that such harassment might occur. *See Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005); *see also Davis*, 526 U.S. at 650 (holding that "funding recipients are properly held

liable in damages only where they are deliberately indifferent to [student-on-student] sexual harassment[] of which they have *actual knowledge*") (emphasis added); *id.* at 648 ("[F]unding recipients are deemed 'deliberately indifferent' to acts of student-on-student [sexual] harassment only where the recipient's response to the harassment or lack thereof is clearly unreasonable in light of the *known* circumstances.") (emphasis added). Where a single incident of harassment is alleged, or where the failure to prevent a particular incident of harassment is asserted, the school district must have had actual knowledge of the sexual harassment *in advance* of the incident. *See Ariel B. ex rel. Deborah B. v. Fort Bend Indep. Sch. Dist.*, 428 F. Supp. 2d 640, 667 (S.D. Tex. 2006); *see also Doe v. Grandville Public Sch. Dist.*, No. 1:18-CV-309, 2019 WL 3050671, at *4 (W.D. Mich. July 12, 2019) (on summary judgment). The complaint alleges that school officials only became aware of JM's alleged sexual harassment of KL *after* the photograph was taken, and it alleges no further sexual harassment by JM thereafter. No prior similar incidents involving either JM or KL are alleged in the complaint. The plaintiff suggests only that school officials *should have* previously recognized that their lax enforcement of the District's cellphone policies

could result in the sort of harassment that occurred here. But, as noted above, the mere possibility that such an incident might occur does not satisfy the actual notice requirement of Title IX. Moreover, after school officials were made aware of the incident, they conducted an investigation, interviewing both KL and JM. Although KL is unhappy with the alleged failure of school officials to impose disciplinary sanctions on JM as a result, "[i]neffective responses [to student-on-student sexual harassment] . . . are not clearly unreasonable." *See Sanches v. Carrollton-Farmers Branch Indep. Sch. Dist.*, 647 F.3d 156, 168 (5th Cir. 2011).

With respect to the sixth element, to be actionable, student-on-student sexual harassment must be "sufficiently severe, pervasive, and objectively offensive as to deprive the victim of access to the school's educational benefits and services." *Davis*, 526 U.S. at 650. "An isolated incident, unless extremely serious, is not sufficient to sustain a hostile educational environment claim." *Katchur v. Thomas Jefferson Univ.*, 354 F. Supp. 3d 655, 664 (E.D. Pa. 2019); *see also, e.g., Carabello v. N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 643 (E.D.N.Y. 2013) (single incident of student-on-student sexual abuse, involving touching but not extreme sexual assault or rape, was not so severe, pervasive, or objectively

offensive that it deprived victim of access to educational opportunities);
*Ariel B.*, 428 F. Supp. 2d at 667 (single incident in which a male student
pulled down female student's shirt and took a photograph of her breast
did not rise to the level of severe or pervasive sexual harassment that
would trigger Title IX protections). *See generally MDB v. Punxsutawney
Christian Sch.*, 386 F. Supp. 3d 565, 579 (W.D. Pa. 2019) ("Although the
Supreme Court noted in *Davis* that it was unlikely that Congress would
have thought a single instance of peer harassment could rise to the level
of denying a victim equal access to an educational program, other Courts
have found 'sufficiently severe' harassment under Title IX based on a
single incident of sexual assault or rape." (citation omitted)). The
complaint here alleges a single, isolated incident that did not involve any
physical contact at all, much less sexual assault or rape, which thus did
not rise to the level of the sort of severe or pervasive sexual harassment
that would trigger Title IX protections. Furthermore, the complaint
alleges no facts to support a finding that KL was actually deprived of
access to the school's educational benefits and services.

Accordingly, the plaintiff's Title IX claim for damages against the
District and Lucas under Title IX, as set forth in Count VI, will be

dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

### H. Count VII: Section 1983 Failure to Train

In Count VII, the plaintiff brings a claim for damages against the District under § 1983 based upon a failure-to-train theory of recovery. But to hold the District liable for failure to train under § 1983, the plaintiff must demonstrate that there was a constitutional violation and that the violation was caused by a policy or custom of the District. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Bridges ex rel. D.B. v. Scranton Sch. Dist.*, 644 Fed. App'x 172, 178 (3d Cir. 2016) (citing *Monell*, 436 U.S. at 690–91). We have dismissed the plaintiff's underlying due process and equal protection claims. *See supra*. The District cannot be held liable for failure to train under § 1983 if its failure to train has not resulted in an underlying constitutional violation. *See Bridges*, 644 Fed. App'x at 178 ("Appellants cannot recover from the School District under Section 1983 for failure to train because there was no underlying constitutional violation." (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1212 n.26 (3d Cir. 1996)); *Moore v. Solanco Sch. Dist.*, 471 F. Supp. 3d 640, 669 n.20 (E.D. Pa. 2020) (quoting *Bridges*, 644 Fed. App'x at 178); *Page ex rel.*

*Page v. Sch. Dist. of Phila.*, 45 F. Supp. 2d 457, 467–68 (E.D. Pa. 1999) (citing *Kneipp*, 95 F.3d at 1212 n.26).

Accordingly, the plaintiff's failure-to-train claim for damages against the District under § 1983, as set forth in Count VII, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6).

## I. State-Law Tort and Contract Claims

The plaintiff has also asserted a variety of state-law tort and contract claims against the District, Lucas, and Maldonado.[15] Where a district court has dismissed all claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over state law claims. 28 U.S.C. § 1367(c)(3). Whether the court will exercise supplemental jurisdiction is within its discretion. *Kach v. Hose*,

---

[15] In addition to the federal civil rights claims discussed above, Count VIII of the complaint asserts a state-law "vicarious liability" tort claim against the District and Lucas, Count IX asserts a state-law negligence claim against the District and Lucas, Count X asserts a state-law breach of contract claim against the District, Count XI asserts a state-law negligent entrustment claim against Maldonado in her personal capacity, Count XII asserts a state-law intentional infliction of emotional distress claim against Maldonado in her capacity as parent and natural guardian of JM, and Count XIII asserts a broadside claim for punitive damages against all defendants on all claims, of which only the state-law claims remain.

589 F.3d 626, 650 (3d Cir. 2009). That decision should be based on "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *Borough of W. Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Cohill*, 484 U.S. at 350 n.7. Upon consideration of these factors and the record before us, we find nothing to distinguish this from the usual case. Therefore, the remaining state-law claims will be dismissed *without prejudice* pursuant to 28 U.S.C. § 1367(c)(3).

### J.  Leave to Amend

The Third Circuit has instructed that, if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile, *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). This instruction applies equally to *pro se* plaintiffs and those represented by counsel. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). In this case, based on the facts alleged in the complaint, it is not

clear that further amendment would be futile, nor is there any basis to believe that such amendment would be inequitable. Therefore, the dismissal of the complaint will be with leave to amend.

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss by the District and Lucas will be granted and the plaintiff's federal civil rights claims against them, set forth in Counts I through VII of the complaint, will be dismissed for failure to state a claim upon which relief can be granted, pursuant to Fed. R. Civ. P. 12(b)(6). The plaintiff's remaining state-law tort and contract claims against the District, Lucas, and Maldonado will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3). However, the complaint will be dismissed with leave to file an amended complaint within a specified time period.

An appropriate order follows.


Dated: September __24__ , 2025        *Joseph F. Saporito, Jr.*
                                       _____
                                       JOSEPH F. SAPORITO, JR.
                                       United States District Judge